PAUL J. CAMBRIA, JR., ESQ. (State Bar No. 177957)
JONATHAN W. BROWN, ESQ. (State Bar No. 223901)
LIPSITZ GREEN SCIME CAMBRIA LLP
42 Delaware Avenue, Suite 120
Buffalo, New York 14202-3924
(716) 849-1333
Facsimile No.: (716) 849-1315
pcambria@lglaw.com
jbrown@lglaw.com

MARK S. HOFFMAN, ESQ. (State Bar No. 108400)
RICHARD W. LABOWE, Esq. (State Bar No. 105905)
LABOWE, LABOWE & HOFFMAN, LLP
1631 West Beverly Boulevard, Second Floor
Los Angeles, California 90026-5746
(213) 250-9800
Facsimile No: (213) 975-1145
mshllh@aol.com
llhlaw1631@aol.com

Attorneys for Plaintiffs Larry C. Flynt, LFP Video Group, LLC, and LFP IP, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY C. FLYNT, LFP VIDEO GROUP, LLC, and LFP IP, LLC, <br><br> Plaintiffs, <br><br> vs. <br><br> FLYNT MEDIA CORPORATION, a Delaware Corporation; **JIMMY FLYNT, II; DUSTIN FLYNT**; and DOES 1 through 10 inclusive, <br><br> Defendants. | Case No.: 2:09-cv-00048-AHM-RZx <br><br> The Hon. A. Howard Matz <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO ALTER OR PROVIDE RELIEF FROM THE ORDER OF PERMANENT INJUNCTION** <br><br> Date: February 8, 2010 <br> Time: 10:00 a.m. |

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................. i

TABLE OF AUTHORITIES .......................................................................... ii

I.  INTRODUCTION ................................................................................. 2

II. ARGUMENT ......................................................................................... 3

    A. Defendants' "Flynt Only" Domain Names Can Be Used to Unfairly Compete with Plaintiffs and Cause of Likelihood of Confusion ........ 3-5

    B. The Court Has Broad Discretion in Crafting a Permanent Injunction To Prevent Violations of the Lanham Act ............................................ 6-7

    C. Defendants Various "Flynt Only" Domain Names ........................... 7-10

III. CONCLUSION ..................................................................................... 11

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                                                          <u>Page</u>

<u>Goto.com, Inc. v. Walt Disney Company,</u>

202 F.3d 1199, at 1207 (9th Cir. 2000)..................................................................5

<u>Internet Specialties West, Inc. v. Milon-DiGriorgio Enterprises, Inc.,</u>

559 F.3d 985, 993 (9th Cir. 2009)..........................................................................3

<u>Perfumebay.com, Inc. v. eBay, Inc.,</u>

506 F.3d 1165, 1173 (9th Cir. 2007)...................................................................3, 7

**TO THIS HONORABLE COURT AND ALL COUNSEL OF RECORD:**

Plaintiffs Larry C. Flynt, LFP Video Group, LLC and LFP IP, LLC ("Plaintiffs") respond to Defendants' Motion to Alter or Provide Relief from the Order of Permanent Injunction ("Motion to Alter") as follows:

## I. INTRODUCTION

Plaintiffs and Defendants are in agreement as to one point —that the Court has wide discretion in crafting a permanent injunction to prohibit Defendants from infringing Plaintiffs' trademark _and_ to prevent future false endorsement violations. In its current form, the permanent injunction achieves both of these goals without unnecessarily restricting Defendants' ability to engage in business.[1]

By their Motion to Alter, Defendants seek to carve out an exception to the permanent injunction so that they can use "Flynt", **without their first names**, for Internet domain names. However, permitting Defendants to use "Flynt only" domain names will run afoul of the Jury's verdict and will effectively allow the Defendants to unfairly compete with the Plaintiffs on the Internet. The purpose of the Trial and the Permanent Injunction was to avoid precisely these types of

---

[1] In Defendants' instant Motion to Alter, they specifically incorporate Objections to the Proposed Permanent Injunction filed on December 28, 2009 (Docket #135). By this reference, Plaintiffs incorporate their Response to Defendants' Objections to Proposed Permanent Injunction filed on January 6, 2010 (Docket # 142).

problems.² Plaintiffs assert that there is no basis for disturbing the Court's Permanent Injunction, and it should remain intact and unchanged.

## II. ARGUMENT

### A. Defendants' "Flynt Only" Domain Names Can Be Used to Unfairly Compete with Plaintiffs and Cause a Likelihood of Confusion

As set forth in Defendants' Motion to Alter, Defendants argue that certain domain names can be "used for websites that have nothing to do with adult entertainment and therefore clearly fall out of the scope of the issues in this case." (Motion to Alter, page 5, lines 4-8). Defendants then point to domain names that Plaintiffs were previously unaware of, namely flyntbank.com and flyntbrothers.com. Defendants claim that such websites "**can** be used for websites that have nothing to do with adult entertainment." [emphasis added]. In other words, Defendants acknowledge that the various domain names **could** be used in the adult entertainment field, but argue that they have not been used up to this point. By advocating for such a fine distinction in what domain names can or cannot be used by them, Defendants seek to have Plaintiffs and the Court rely on

---

² "The essence of trademark infringement is the likelihood of confusion, and an injunction should be fashioned to prevent just that." Internet Specialties West, Inc. v. Milon-DiGriorgio Enterprises, Inc. 559 F.3d 985, 993 (9th Cir. 2009). In the case of a defendant's marketing its subject goods on the Internet, the three most important factors in evaluating the likelihood of confusion are: (1) the similarity of the marks; (2) the relatedness of the goods and services, and (3) the parties' simultaneous use of the web as a marketing channel. Perfumebay.com, Inc. v. eBay, Inc., 506 F.3d 1165, 1173 (9th Cir. 2007).

their "good faith" contentions that such websites shall never be used by them in future infringing activity. Plaintiffs posit that such a fine distinction does too little in establishing bright line rules that are easily understood and implemented, and opens up numerous gray areas that would have the tendency to force the parties back into a dispute.

Under the Permanent Injunction, Defendants are clearly on notice of what is prohibited – utilization of "Flynt only" domain names. Neither the parties nor the Court must delve into the subjective intent of the infringing Defendants as to what use they plan for a particular domain name, such flyntbank.com or flyntvod.com or flynttv.com. Thus, the current version of the Permanent Injunction avoids disputes as to whether the domain name incorporates any element traditionally associated with adult entertainment or is suggestive of means of distribution for products associated with the adult entertainment industry.

The standard advocated by Defendants creates numerous gray areas, and conceivably forces the parties, and most likely the Court, to discern the intent of Defendants, individuals who have already been found to have engaged in unlawful conduct. Defendants' muddled standard potentially creates more problems than it solves, and places an unfair burden on Plaintiffs to check each potential "Flynt only" domain name that could be registered by Defendants to ensure compliance with the Court's order. Given the almost infinite number of such sites, the

injunction advocated by Defendants in effect rewards Defendants for their unlawful conduct, and makes it immeasurably difficult, if not impossible for Plaintiffs, to ensure compliance.

Also, given the nature of Internet marketing, the likelihood of confusion is particularly high. As stated in Goto.com, Inc. v. Walt Disney Company, "[w]e now reiterate that the Web, as a marketing channel, is particularly susceptible to a likelihood of confusion since, as it did in this case, it allows for competing marks to be encountered at the same time, on the same screen." 202 F.3d 1199, at 1207 (9th Cir. 2000).

Use of the mark Flynt alone by defendants in any domain name creates confusion as to the source and operator of the website. The jury has already found that use of Flynt alone is confusingly similar to Plaintiffs' trademark. A stand alone "Flynt" domain name operated by Defendants does not negate this confusion, and, in fact, adds to it. As noted in Goto.com, Inc., a "Flynt only" domain name operated by Defendants could compete directly with the LARRY FLYNT trademark at the same time and on the same screen. It is the confusion as to origin that was at the heart of Plaintiffs' case. The proposal requested by Defendants does not address this issue, and in practice would simply compound the confusion already caused by their infringing conduct. Accordingly, Defendants' motion should be denied in its entirety.

5

## B. The Court Has Broad Discretion in Crafting a Permanent Injunction to Prevent Violations of the Lanham Act

To the extent that the Court determines that the domain name transfer requirement should be altered to address the alleged "non-adult" domain names, Plaintiffs contend that Defendants should transfer: (i) their domain names that were used in commerce to promote Defendants' infringing adult entertainment business (i.e. flyntdistribution.com); (ii) domain names that are related to adult entertainment and/or that are associated with the distribution of adult entertainment products or methods of distribution of adult entertainment products (i.e. flyntxxx.com and flyntvod.com); and (iii) domain names that "mimic" or are similar to domain names owned by Plaintiffs and/or Plaintiffs' affiliates (i.e. flynthd.com). To the extent that a domain name owned by a Defendant falls outside the above categories (i.e. flyntbank.com), **Defendants should be enjoined from using such "non-adult" domain names for any commercial adult entertainment purpose**, including but not limited to the distribution, sale or promotion of adult motion pictures, still pictures (photographs), and novelties (adult sex toys). Defendants' instant motion implicitly recognizes that despite the seemingly benign nature of such domain names as flyntbank.com, such domain names could still be utilized for adult entertainment purposes. Thus, unless some language is incorporated in a permanent injunction enjoining such adult entertainment uses, the potential exists for future unlawful conduct by Defendants.

This should not be countenanced by the Court, and the Court has broad discretion in crafting a permanent injunction to address the infringing use of a trademark.[3]

Defendants argue that Plaintiffs were somehow obligated to bring a separate cyber-squatting claim if they wanted to prevent "Flynt" from being used in domain names. However, a cyber-squatting claim is not necessary to prevent trademark infringement on the Internet.[4] Defendants seem to have forgotten that the Jury's finding that "by using the name FLYNT, Defendant used [or are using] Plaintiff Larry Flynt's name, persona or likeness in a manner that is likely to cause confusion or to deceive consumers as to whether Larry Flynt has an affiliation, connection, or association with Defendants' goods, services or commercial activity." (Verdict Sheet, Docket #121).

### C.   Defendants Various "Flynt Only" Domain Names

In their Motion to Alter, Defendants claim they have registered at least fifty (50) domain names that use "Flynt" without Defendants' first name. Plaintiffs are

---

[3] As set forth in Perfumebay.com, "15 U.S.C. 1116(a) vests the district court with the power to grant injunctions according to principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the trademark owner […] [w]hen the infringing use is for a similar service, a broad injunction is especially appropriate." Id. at 1177 [quotations and citations omitted.].

[4] Among other things, cases such as Perfumebay involved trademark infringement, not cyber-squatting. Also, the false endorsement aspect of this case distinguishes it from the cases cited in Defendants' Brief.

7

unaware of the domain names for these websites, and therefore cannot comment as to whether or not they infringe upon the LARRY FLYNT trademark or pose a risk false endorsement based on Larry Flynt's fame.[5] Accordingly, as set forth above, Plaintiffs suggest that if the Court, in its discretion, decides to alter the Permanent Injunctions' provision regarding the transfer of domain names, that the Defendants should be enjoined from using any "Flynt only" domain names for purposes of distributing, selling or promoting adult entertainment products or services.[6]

Here, Defendants used several "Flynt only" websites in commerce, and, therefore, these websites have infringed on Plantiffs' LARRY FLYNT trademark. For example, flyntcorp.com; and flyntdistribution.com were clearly being used in

---

[5] This mere fact highlights the difficulty placed on Plaintiffs to ensure that Defendants are in compliance with any permanent injunction that is put in place along the lines advocated by Defendants. Instead of placing the burden on Defendants by foreclosing their use of "Flynt" only domain names, the position of Defendants places the burden of ensuring enforcement on Plaintiffs who would have to (1) identify each "Flynt only" domain registered to Defendants, and (2) ensure that each such website was being operated in compliance with the injunction.

[6] Given that Plaintiffs are unaware of all of the 50 domain names referenced in Defendants' motion, Plaintiffs specifically reserve all rights to bring future actions, whether through UDRP or other methods, to contest the use of domain names that violate the rights of Plaintiffs.

commerce to sell or promote an infringing product. (Trial Exhibits 3 and 4).[7] Plaintiffs do not know the full list of Defendants additional fifty "Flynt only" domain names, but have discovered the following twelve (12) websites that are registered to Defendant Jimmy Flynt: 1. flyntcash.com; 2. flyntclub.com; 3. flynthd.com; 4. flyntinteractive.com; 5. flyntlingerie.com; 6. flyntlive.com; 7. flyntstore.com; 8. flynttv.com; 9. flyntvod.com; 10. flyntxxx.com; 11. iflynt.com; and 12. flyntgenerations.com. In theory, Defendants could register a virtually unlimited number of "Flynt" domain names.

Many of these websites can be used for adult entertainment, and, additionally, it appears that Defendants attempted to mimic or copy certain "Hustler" domain names by registering a "Flynt" version of the same domain name. For example:

  * **Flynthd.com**: "HD" stands for "High Definition" and is a common abbreviation for all movies, both adult and mainstream. Plaintiffs not only distribute adult videos in HD, but Plaintiffs' affiliate, LFP Internet Group, LLC, operates hustlerhd.com.

  * **Flyntxxx.com**: It is common knowledge that "xxx" refers to "triple X-rated" sexually explicit, adult entertainment material.

---

[7] Testimony at trial also included names of certain "inactive" websites, namely flyntxxx.com, flyntvod.com, and flyntgenerations.com (Trial Transcript, Day 2, Vol. 3, pages 255-257).

* **Flyntlingerie.com**: Plaintiffs operate Hustlerlingerie.com, which sells lingerie and women's apparel in the adult entertainment market.

* **Flyntvod.com:** "vod" stands for "video on demand", which is a technology that allows consumers to purchase and view movies through the Internet or via cable TV. Plaintiffs operate Hustlervod.com, which sells adult movies through "video on demand" and Plaintiffs also distribute their adult motion pictures via cable TV.

Accord, flyntclub.com for Plaintiffs' hustlerclub.com; flynttv.com for hustlertv.com.

For many of Plaintiffs' "Hustler" websites, Defendants have created a counterpart, knock-off, website. By registering these domain names, Defendants have demonstrated an unmistakable and undeniable intent to continue trading-off of Plaintiffs' LARRY FLYNT trademark and to confuse the public into believing Larry Flynt endorses these websites.

Given the above, in the event that certain "non-adult" domain names are retained by Defendants, the Defendants should be enjoined from using any such domains in the field of adult entertainment. Again, nothing in the Permanent Injunction prohibits Defendants from using domain names such as jimmyflynt.com or jimmyflyntxxx.com or dustinflyntvod.com or any other, almost infinite number of, permutations of the same.

## III. CONCLUSION

Plaintiffs seek finality to this proceeding. It is neither the intent nor desire of Plaintiffs to act as the compliance officer for Defendants. Any injunction should place this burden squarely where it belongs – on Defendants. The Defendants' "Flynt only" domain names infringe upon or are likely to be confused with Plaintiff Larry Flynt and his companies. This is a direct violation of the Jury's finding and Defendants should be required to turn-over the offending websites.

Should the Court believe otherwise, then Plaintiff respectfully request that their suggested categories be adopted, and that any permanent injunction be worded in such a manner so as to foreclose, as reasonably as possible, any attempt by Defendants to "skirt the edges" or play the margins of what is or is not permissible.

By bringing the instant motion, Defendants foreshadow their intent to find loopholes and outs to any language that is less definitive than what has already been adopted by the Court. Plaintiffs simply seek to foreclose such potential gamesmanship and to enjoy their well-earned peace in this matter.

Date: January 19, 2010            LABOWE, LABOWE & HOFFMAN, LLP

                                  LIPSITZ GREEN SCIME CAMBRIA LLP

                                  By:  /s/Jonathan W. Brown
                                       Jonathan W. Brown, Esq.
                                       Attorneys for Plaintiffs Larry C. Flynt, LFP
                                       Video Group, LLC, and LFP IP, LLC