DANIEL C. DECARLO, SB# 160307
E-Mail: decarlo@lbbslaw.com
MINA I. HAMILTON, SB# 213917
E-Mail: hamilton@lbbslaw.com
DANIEL R. LEWIS, SB# 260106
E-Mail: drlewis@lbbslaw.com
**LEWIS BRISBOIS BISGAARD & SMITH LLP**
221 North Figueroa Street, Suite 1200
Los Angeles, California 90012
Telephone: (213) 250-1800
Facsimile: (213) 250-7900

James D. Boyle, Esq. (Nevada Bar No. 08384)
Kimberly J. Cooper, Esq. (Nevada Bar No. 09533)
SANTORO, DRIGGS, WALCH, KEARNEY,
 HOLLEY & THOMPSON
400 South Fourth Street, Suite 300
Las Vegas, Nevada 89101
Telephone: 702.791.0308
Fax No.: 702.791.1912
E-Mail: jboyle@nevadafirm.com
         kcooper@nevadafirm.com

Admitted Pro Hac Vice

Attorneys for Defendants Flynt Media Corporation;
Jimmy Flynt, II; Dustin Flynt

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY C. FLYNT; LFP VIDEO GROUP, LLC; and LFP IP, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>FLYNT MEDIA CORPORATION, a Delaware Corporation; JIMMY FLYNT, II; DUSTIN FLYNT; and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO. CV09-00048 AHM (RZx)The Hon. A. Howard Matz<br><br>**DEFENDANTS' REPLY MEMORANDUM TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO ALTER OR PROVIDE RELIEF FROM THE ORDER OF PERMANENT INJUNCTION**<br><br>[Filed with Jimmy Flynt, II, Declaration and Exhibit of Domain Names]<br><br>Date:  February 8, 2010<br>Time:  10:00 a.m. |

4829-7316-0453.1

DEFENDANTS' REPLY MEMORANDUM

Defendants Flynt Media Corporation, Jimmy Flynt, II, and Dustin Flynt ("Defendants") submit this memorandum of law in further support of their Motion to Alter or Provide Relief From the Order of Permanent Injunction ("Motion", Docket # 139) and their Objections (Docket #135) and in reply to the Response to Defendants' Objections (Docket #142) and Opposition (Docket #146) submitted by Plaintiffs Larry C. Flynt, LFP Video Group, LLC, and LFP, LLC ("Plaintiffs").

## **ARGUMENT**

**I.     INTRODUCTION**

Plaintiffs' Opposition Brief is striking in its failure to address *any* of the significant cases or legal arguments' of Defendants. Rather, Plaintiffs merely reiterate what is no longer in dispute: that Plaintiffs prevailed on their likelihood of confusion case brought under the Lanham Act, 15 U.S.C. §1125(a) ("1125(a) Claim") and therefore the Court has the discretion to fashion relief that prevents Defendants from *using* the stand alone term FLYNT *with adult-themed goods and services* in a manner that is likely to cause confusion as to the source of goods or services.

Plaintiffs essentially argue that *any use* of the stand alone surname "Flynt" by Defendants in business should by forever denied – and not only with adult goods and services. The issues presented at trial in no fashion provide Plaintiffs with the right to usurp the Flynt surname for ***all*** goods and services for the rest of time. Plaintiffs insist that Defendants should be ordered to transfer to them all "flynt" domain names that were rightfully first registered by Defendants, even though almost all of the domains have never been used and many are capable of future use in a non-confusing fashion with non-adult goods or services. For example, Defendants have registered the domains for flyntbrothers,com, flyntstore.com, flyntclub.com, flyntclothing.com, to name a few. See, Declaration of Jimmy Flynt and Exhibit (list of registered domain names).

Apparently, Plaintiffs believe that Defendants should be barred from using domain names even though, Plaintiffs seem to concede, such use would be lawful. And

1  Plaintiffs' rationale for asking the court to bar Defendants from engaging in indisputably
2  lawful conduct?  Apparently, it is because they want finality and because they do not
3  want to have to serve as a compliance officer for "gray areas." Not surprisingly,
4  Plaintiffs have advanced *no authority* for this bold proposition and are not the least bit
5  timid about demanding that Defendants' ability to act lawfully be divested in the
6  interests of Plaintiffs' convenience only.

## II. PLAINTIFFS CONCEDE THAT AN INJUNCTION MUST CONFORM ONLY TO THE ISSUES IN THE CASE AND NOT BE OVERLY BROAD

By failing to address the key cases on point, Plaintiffs concede, as they must, that an overly broad injunction is an abuse of discretion; that courts must closely tailor injunctions to *the harm they address*; and that an injunction should give relief only *from the wrong committed* and not be so broad as to inflict *unwarranted injury* on a defendant. See, e.g., U.S. v. BNS Inc., 858 F. 2d 456, 460 (9th Cir. 1988); Emergency One, Inc. v. Am. Fire Eagle Co., 332 F.3d 264 (4th Cir. 2003); E.& J. Gallo Winery v. Gallo Cattle Co., 967 F.2d 1280, 1291 (9th Cir. 1992).  Far from trying to distinguish these cases, Plaintiffs actually advocate in direct contravention to these authorities by insisting that the Injunction contain such broad language in the interests of "avoid[ing] disputes" in the future.

In Gallo, for example, the Ninth Circuit concluded that the District Court's injunction was overbroad because it placed a "needless burden on defendant" that would not allow Joseph Gallo to continue using his own name in some meaningful but not misleading fashion.  This case is directly on point as the impact of the current Injunction would prevent Defendants from also engaging in lawful conduct.

Here, paragraphs 1(a)-(c) and 2 of the Injunction are more than adequate to address the 1125(a) Claim and jury finding and to alleviate confusion. Those paragraphs limit Defendants' use of the stand alone term "FLYNT" in any manner (*including* on Internet websites) in association with adult-themed good and services in *any confusing*

*manner* (c). Paragraph 3's order to transfer numerous registered but unused domain names inflicts unwarranted injury on Defendants because they prohibit, as in Gallo, *supra*, Defendants' future use of their surname Flynt in a non-misleading manner as part of a domain name. For example, Defendants should have every right to utilize flyntbrothers.com or flyntbank.com or flynthd.com, or numerous other domains in connection with a website that does not otherwise violate paragraphs 1 and 2 of the Injunction. Simply because there is a wide variety of these potential uses in the future does not mean that an overly broad injunction is warranted.

### III. PLAINTIFFS CONCEDE THAT THEY HAD NO CLAIM IN THIS CASE TO SUPPORT THE TRANSFER OF *INACTIVE* DOMAIN NAMES

By their glaring omission of any discussion of the significant issue of domain name "registration" versus domain name "use,"[1/] Plaintiffs concede that the they failed to bring a cause of action for wrongful domain name registration under the Lanham Act, 15 U.S.C. § 1125(d). There has been no adjudication of whether *any* particular domain name infringes the rights of Plaintiffs nor whether the mere registration of such is in any way wrongful. Indeed, to have placed "registrations" as opposed to "use" at issue, Plaintiffs would have had to have proceeded under §1125(d).[2/]

---

[1/] Registration of a domain name alone can never serve as the basis for a trademark infringement claim because mere registration is not "use" and "use" of an alleged infringing mark is an element of trademark infringement or false endorsement. (See cases cited in Defendants' Motion, p. 5-6). As such, an attack on the "registration" of a domain name, as opposed to its infringing use, is constrained to the cybersquatting prong of The Lanham Act, Section 1125(d). In short, the mere registration of a domain name, with nothing more, cannot be an 1125(a) Claim.

[2/] Congress carefully crafted and enacted the Federal Anti-cybersquatting Act and its remedy of the transfer of domains names and codified it in 15 U.S.C. 1125(d). As noted previously, the courts have concluded that the mere registration of a domain name is not sufficient to trigger infringement under the Lanham Act (see cases cited in Defendants' Motion, p. 5-6). Therefore, an 1125(d) Claim is used to address the wrongful registration of domain names that are confusingly similar to a registered or unregistered mark or dilutive of a famous mark. See, 15 U.S.C. § 1125(d)(1)(A)(C)("In any civil action involving the registration or use of a domain name *under this paragraph*, a court may order the forfeiture or cancellation of the domain name *or the transfer* of the domain name to the owner of the mark.")(Emphasis added).

1    Moreover, Plaintiffs admit that they "cannot comment as to whether or not [numerous domain names] infringe upon the LARRY FLYNT trademark or pose a risk [of] false endorsement based on Larry Flynt's fame." (Opp. Br. at p. 8:1-4.) Why then, are Plaintiffs insisting that Defendants be divested of rights in gross (the registrations) when they readily concede no laws have been violated by these registrations? Again, and apparently, it is in the interests of convenience. Specifically, Plaintiffs would rather have this Court uphold an overly broad Injunction then deal with potential future claims unrelated to the current litigation. Such a position is not supported by the law.

Here, Plaintiffs admittedly never pled nor proved an 1125(d) domain name case for unlawful registration of domain names, which as noted previously, have a host of different elements from an 1125(a) Claim. Plaintiffs now recognize their mistake and attempt in their Opp. Br. at p. 8, ft. 6, to somehow "reserve all rights" to bring "future actions, whether through UDRP or other methods, to contest the use of the domain names that violate the rights of Plaintiffs."[3/] In essence, they now seek to have this Court adjudicate what should have been for the jury to decide, namely, whether Defendants' mere registration of various "flynt" domains violate the Lanham Act.

This post-trial adjudication violates the fundamental principles of res judicata and due process. Plaintiffs could have, but chose not to, bring a claim under §1125(d) and should now be precluded from asserting it in this case after a final judgment has been rendered. Moreover, because Defendants were not given notice or an opportunity to be heard on this claim, they were deprived of asserting their defenses. Had an 1125(d) Claim been presented to the jury, Defendants would have argued that there was no "bad faith" registration of domain names, a required element under the statute, because the "Flynt" name comprises the surname of Defendants and because Plaintiffs had never used FLYNT as a stand alone trademark.

---

[3/] Whether Plaintiffs would be judicially estopped from bringing such a claim in civil court by principles of claim preclusion are not necessary for this Court to determine.

1   These are key defenses to an 1125(d) Claim. In Congress' drafting of the statute, it made clear that an element that a plaintiff would have to prove to prevail was the "bad faith" intent of the defendant when it registered the domains. Most significantly, one enumerated factor that would *mitigate* against a finding of "bad faith" was "the extent to which the domain name consists of the *legal name of the person* or a name that is otherwise commonly used to identify that person." See, 15 U.S.C. § 1125(d)(1)(B)(i)(II)(emphasis added). In addition, the statute specifically provides that "[b]ad faith intent...shall not be found in any case in which the court determines that *the person believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful.*" 15 U.S.C. § 1125(d)(1)(B)(ii). By not bringing the 1125(d) Claim at trial but having the transfer order stand, Defendants have effectively been deprived of due process.

Finally, the three cases cited by Plaintiffs are inapposite to the issues that are being presented by the Defendants in their Motion and Objections. Those cases dealt with infringing *uses* of domain names, where the domain names were being used as trademarks and/or in connection with active websites. Here, most of Defendants' domain names have not been used as trademarks in connection with an active website (see, Declaration of Jimmy Flynt filed herewith), and there was never a jury finding that *any* domain name was infringing or caused confusion.

## IV. DEFENDANTS' OTHER OBJECTIONS TO THE INJUNCTION ARE VALID AND NOT REFUTED BY PLAINTIFFS

In addition to the domain name issue, Defendants continue to maintain that the requirements in paragraph 2 for the "font size, font color, and background color for the names 'Jimmy' and/or 'Dustin" are overly broad and unnecessary to effectuate the purpose of alleviating consumer confusion. Contrary to Plaintiffs' suggestions, it is not necessary to dictate the creative decisions behind the color of fonts or style of fonts that must be used in branding. All that is necessary is for Defendants to be ordered to use

their first names in a conspicuous fashion and in close physical proximity to "Flynt."

Moreover, as noted previously, and not refuted by Plaintiffs, the disclaimer in paragraph 2 is vaguely worded as it requires a statement of non-affiliation of "any entity associated or affiliated with [Larry Flynt or Hustler]." There may be many retailers, wholesalers, creative talent, or others that are associated with Larry Flynt or Hustler that also choose to legally do business with Defendants. A disclaimer would not be accurate in such cases. An indefinite (as to time) disclaimer is also not warranted in light of the trial record and evidence, and the legal authorities that say disclaimers are not helpful in alleviating confusion, which are not refuted by Plaintiffs.

Finally, paragraph 5 of the Injunction is not necessary because Defendants should be allowed to physically alter any materials to comply with the first two paragraphs of the Injunction, if they so choose. Alteration may occur, for example, by placing labels in front of the name "FLYNT" on the dvd box covers with the first names of Defendants. The requirement to destroy all materials that violate the terms of the order is unwarranted and overly broad. Paragraphs 1 and 2 of the Injunction restrict the use of confusing materials already.

## V. CONCLUSION

For all the foregoing reasons, Defendants respectfully request that this Court enter the Defendants' Alternate Proposed Injunction in the form (or substantially the form) submitted as Exhibit D to their original Objections (Docket # 135).

DATED: January 25, 2010          LEWIS BRISBOIS BISGAARD & SMITH LLP

By_____/s/_____
    Daniel C. Decarlo
    Mina I. Hamilton
    Daniel R. Lewis
    Attorneys for Defendants