```
 1                  UNITED STATES DISTRICT COURT

 2          CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

 3            HONORABLE A. HOWARD MATZ, U.S. DISTRICT JUDGE

 4                                - - -

 5

 6
                                          )
 7   LARRY C. FLYNT,                      )
                                          )
 8                     PLAINTIFF,         )
                                          )
 9        vs.                             ) No. CV09-00048-AHM(RZx)
                                          )
10   FLYNT MEDIA CORPORATION, ET AL.,     )
                                          )
11                     DEFENDANTS.        )
     _____)
12

13

14

15

16            REPORTER'S TRANSCRIPT OF PROCEEDINGS

17                   LOS ANGELES, CALIFORNIA

18                   MONDAY, FEBRUARY 8, 2010

19

20

21

22        _____

23            CINDY L. NIRENBERG, CSR 5059
              U.S. Official Court Reporter
24            312 North Spring Street, #438
              Los Angeles, California 90012
25                 www.cindynirenberg.com
```

```
 1   APPEARANCES OF COUNSEL:

 2

 3   FOR THE PLAINTIFFS:
                         LABOWE LABOWE & HOFFMAN
 4                       BY: MARK S. HOFFMAN, ATTORNEY AT LAW
                             RICHARD W. LABOWE, ATTORNEY AT LAW
 5                       1631 WEST BEVERLY BOULEVARD
                         2ND FLOOR
 6                       LOS ANGELES, CA 90026
                         213-250-9800
 7

 8

 9   FOR THE DEFENDANTS:
                         LEWIS BRISBOIS BISGAARD & SMITH
10                       BY: MINA I. HAMILTON, ATTORNEY AT LAW
                             DANIEL C. DECARLO, ATTORNEY AT LAW
11                       221 N. FIGUEROA STREET
                         SUITE 1200
12                       LOS ANGELES, CA 90012
                         213-250-1800
13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                              I N D E X
 2
 3   COMMENTS BY:                         PAGE
 4   MR. HOFFMAN                             4
     MS. HAMILTON                            8
 5   MR. HOFFMAN                            10
     MS. HAMILTON                           10
 6   MR. DECARLO                            16
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1            LOS ANGELES, CALIFORNIA; MONDAY, FEBRUARY 8, 2010
 2                              10:00 A.M.
 3                              - - - - -
 4            THE CLERK:  Calling Item Number 2, CV09-48, Larry C.
 5   Flynt versus Flynt Media Corporation, et al.
 6            Counsel, state your appearances, please.
 7            MR. HOFFMAN:  Good morning, Your Honor.  Mark Hoffman
 8   of Labowe Labowe & Hoffman, and Richard Labowe of Labowe Labowe
 9   & Hoffman on behalf of plaintiffs Larry C. Flynt, LFP Video
10   Group LLC and LFP IP, LLC.
11            THE COURT:  Good morning.
12            MS. HAMILTON:  Good morning, Your Honor.  Mina
13   Hamilton and Dan DeCarlo on behalf of defendants Flynt Media
14   Corporation, Jimmy Flynt, II, and Dustin Flynt.
15            THE COURT:  All right.  Good morning to both of you
16   as well.
17            I circulated to all the lawyers a modified order of
18   permanent injunction which addresses the motion that the
19   defendants made to modify it.
20            I think part of their motion was meritorious.  I took
21   the opportunity to put the language in better grammatical shape
22   and clearer, I think; easier to enforce if there are problems,
23   which I hope there won't be.
24            Do you wish to be heard, Mr. Hoffman?
25            MR. HOFFMAN:  Your Honor, yes.  I'd like to just
```

```
 1  clarify, if the Court would indulge me, at Paragraph 1(a), Line
 2  15, Your Honor.
 3          THE COURT:  Yes.
 4          MR. HOFFMAN:  And I'm concerned about media that
 5  could be created in a format after today's date, and if we
 6  could have the language "now existing" or "hereafter now
 7  created."  That was one point I have.
 8          THE COURT:  Well, that's not a point that has been
 9  raised even in the papers.  And I grant you that the dizzying
10  advances and the pace of them and the technology could well
11  result in some new-fangled gizmo being available to contain
12  this adult content, but the remedy that would be available to
13  you then would be to come in and seek to extend or modify the
14  injunction to cover that.  And I don't want to invite greater
15  ambiguity and more difficulty and enforcement by adding
16  something as vague as what you propose, so I'm not inclined to
17  do that.
18          MR. HOFFMAN:  Yes, Your Honor.  In Paragraph 2(b),
19  I'd want to clarify the calendar year is 2010, '11 and '12.
20  That was the intent of Your Honor.
21          THE COURT:  Yes.  Since we're at the beginning of
22  2010, that's pretty much it.  And the purpose of that is to
23  allow the commercial impact of the infringement to be addressed
24  in a reasonable fashion but not on an open-ended and definite
25  one, so I think it's fair.
```

```
 1              MR. HOFFMAN:  Yes, Your Honor.
 2              And Paragraph 5 in the order of permanent injunction,
 3   which Your Honor signed on December 28, "Within 15 days of the
 4   issuance of the order, defendant shall destroy all DVDs," et
 5   cetera, that was not contained within the --
 6              THE COURT:  I know, and that was one of the things
 7   that was challenged, and I think the challenge appeared to have
 8   merit.
 9              The idea is that the boxes can be modified to delete
10   and remove any of the infringing content and then they would be
11   commercially usable.  They're not prohibited from displaying
12   and marketing the films themselves.
13              I think that was the point that you were trying to
14   make; is that right, Ms. Hamilton?
15              MS. HAMILTON:  Yes, Your Honor.
16              THE COURT:  So long as they're not being used in a
17   fashion that infringes your clients' rights, I don't see why
18   they have to be destroyed.
19              MR. HOFFMAN:  Very well, Your Honor.
20              Then the last point, when the deposition of Jimmy
21   Flynt, Jr., was taken -- I think it was the third week of April
22   of 2009 -- I think there was a 30(b)(6) and an individual
23   deposition, and there was a disclosure, if I recall
24   correctly -- I don't want to misstate -- of approximately five
25   domain names.
```

```
 1            In the reply in Attachment A to the declaration,
 2   there's 72 domain names.  Included on that extensive list,
 3   there are flyntgaming.com --
 4            THE COURT:  Just a second.  Let me be able to follow
 5   you.  You are talking about the reply papers on this motion?
 6            MR. HOFFMAN:  Yes, Your Honor.
 7            THE COURT:  So let me get them out.
 8            What page, please?
 9            MR. HOFFMAN:  This is Exhibit A to the declaration of
10   Jimmy Flynt, II.
11            THE COURT:  All right.  I have it.
12            MR. HOFFMAN:  And Exhibit A, I'm looking at items, as
13   an example, 18 and 19 -- correction, 25 and 26, flyntgames.com,
14   flyntgaming.com --
15            THE COURT:  Yes.
16            MR. HOFFMAN:  -- and 53, flyntpoker.com.
17            To me, respectfully, it's obvious what these folks
18   did.  They never disclosed the 67 or so other domain names that
19   may well have been in existence at the time of the deposition.
20   And my client -- the testimony at trial -- operates a casino,
21   Hustler Casino, so we have concerns in terms of where they are
22   going in using these domain names.
23            THE COURT:  Are you construing Jimmy Flynt's
24   declaration and the attachment to mean that he set up or is
25   involved with these domain names?
```

```
 1              MR. HOFFMAN:  I believe -- the domain names were
 2   created during the pendency of the lawsuit is my understanding,
 3   and the disclosure of this extensive list was at the reply I
 4   believe on January 25th.
 5              THE COURT:  Well, it wasn't clear from the
 6   declaration.  It may be that these are Jimmy's or Dustin's or
 7   both's creations.
 8              When I see something like flyntbank and three
 9   iterations and flyntamerica, it didn't leap out to me that this
10   is what they were doing.  Most of the others could be
11   consistent with their business.
12              Anyway, what's the story on the Exhibit A to the --
13   wait a second.  Let me hear from Ms. Hamilton.
14              You can speak to me from where you are.
15              MS. HAMILTON:  Those domain names in Exhibit A were
16   registered by Jimmy Flynt, Jr., and they were registered before
17   the lawsuit began.
18              They were never asked for in discovery by the
19   plaintiffs.  The underlying case was -- they didn't pursue
20   domain name cybersquatting.  They didn't bring a motion to
21   compel the disclosure.  This only became an issue in the
22   injunction phase, and that's why they were disclosed to Your
23   Honor because of the argument made in our motion to alter the
24   injunction.
25              THE COURT:  All right. Well, that at least
```

1  establishes what the factual situation is.
2          What is the relief that you're seeking?  What's the
3  point you're making, please?
4          MR. HOFFMAN:  My point is that it looks like we have
5  to police all these domain names.  And I'm not going to cry to
6  the Court, but I was hopeful that, although I like coming to
7  this courtroom, I don't come back on this case again.  And I'll
8  say nothing more, Your Honor.  Thank you for your time.
9          THE COURT:  Well, you're welcome to come back to the
10 courtroom.
11         MR. HOFFMAN:  On this case.
12         THE COURT:  You're a very nice man.
13     *(Laughter.)*
14         THE COURT:  But I don't follow what you're telling me
15 because the scope of the injunction would apply to these as
16 well as to the others.
17         MR. HOFFMAN:  Thank you for that clarification, Your
18 Honor.
19         THE COURT:  And there's no issue about that.  They
20 don't have to be called out in the terms itself.
21         So with that, do you have any response to the
22 modified order?
23         MS. HAMILTON:  Yes, Your Honor.
24         THE COURT:  Go ahead.
25         Do you like coming to the courtroom, too?

Case 2:09-cv-00048-AHM-RZ   Document 150   Filed 04/30/10   Page 10 of 17   Page ID
#:2872

```
 1              MS. HAMILTON:  I do.  I like this courtroom.
 2              THE COURT:  Well, why didn't you say so with the
 3     first words out of your mouth, then?
 4          (Laughter.)
 5              MS. HAMILTON:  I was surprised it wasn't taken off
 6     calendar.  I'm very happy about that.
 7              Your Honor, in Paragraph 1(a), I want -- we'd like
 8     some clarification.
 9              As it reads, we understand it to read that the use of
10     the corporate names Flynt Media Corporation and Flynt Corp.
11     Distribution cannot be used in connection with the sale or
12     offering for sale of promotion or advertising of adult themes,
13     goods and services, and we have the idea of adding a phrase
14     after to say, "This does not mean to include the trade name
15     usage that is not promotional or advertising in nature."
16              And that would be, for example, on a copyright notice
17     or registered as a corporate name.
18              I believe at least one of those names are registered
19     as our clients' corporate name of their business.  So we want
20     to make sure you're not preventing them from having those names
21     as a corporate name, as opposed to using them in a trademark
22     sense.
23              THE COURT:  I don't understand how this concern can
24     be -- can arise out of Paragraph 1(a).
25              MS. HAMILTON:  Okay.
```

```
 1              THE COURT:  1(a) doesn't address that concern.  And
 2   the use that this injunction is all about, I think the lawyers
 3   are being unnecessarily picayune and overlooking what the big
 4   picture is here.
 5              Your clients were found guilty of infringement.  This
 6   is a standard way of precluding them from engaging in that
 7   conduct again, and I want to call to your particular attention
 8   that it says, "Including but not limited to."
 9              So the reference to the Flynt Media Corporation and
10   the Flynt Corp. Distribution is not the full scope of the reach
11   of this injunction.
12              MS. HAMILTON:  Thank you, Your Honor.
13              And we believe that, too, that 1(a), (b) and (c)
14   adequately addresses the trademark infringement that our
15   clients were found liable for.
16              Paragraph 2(a), we do maintain our objection to
17   controlling the size and color and style and background color
18   of the use of Jimmy and Dustin Flynt.
19              THE COURT:  I read your objections.  I thought about
20   your objections.  I didn't find them to be persuasive.
21              I don't think this is an inappropriate provision.  It
22   is consistent with the purpose of the injunction, the remedies
23   that the injunctions are required to provide, and it's not
24   onerous.  So I'm not unaware that that was your position; I
25   read your papers.
```

1          MS. HAMILTON:  And then on Paragraph 3, Your Honor,
2   while we appreciate that the Court has understood our position
3   on the transfer of the domain names, we believe that this
4   provision paragraph is still overbroad.
5          The usage of internet domain names by our clients in
6   the future, even with adult-themed goods, is not prohibited.
7          For example, flyntbrothers.com would simply be a
8   domain name, a URL address.  What would be on that website
9   could be an adult product being advertised, but it wouldn't be
10  infringing or confusing, necessarily, if they said -- if it was
11  flyntbrothers.com and on the website the brand was Jimmy and
12  Dustin Flynt's clothing line, for example.
13         THE COURT:  You know the whole point about what you
14  just said I think can be reduced to one word and that was
15  "necessarily."  You say "without necessarily being infringing,"
16  and that's the qualifier that's inappropriate here.  It easily
17  could be.
18         This kind of concern was what was central to the
19  evidence at the trial and the scope of the special verdict.  So
20  I don't understand what modifications in Paragraph 3 you are
21  proposing that would be consistent with the outcome of the
22  trial.
23         MS. HAMILTON:  Well, I think the trial, Your Honor --
24  the evidence at the trial was only focused on Flynt being used
25  with DVD box covers and in promotional items.

1   There was never any evidence that a domain name by
2   itself, without the presentation on the website, was an
3   infringing trademark infringement.
4   Numerous cases in the Ninth Circuit say that
5   trademark registration and use -- I mean, not trademark --
6   domain registration and use by themselves do not equate with
7   trademark use.  There has to be something more.  There has to
8   be use of the domain name as a trademark.
9   If you have a logo, goto.com, that's the logo and
10  that's the trademark.  Then the domain name comes into play in
11  a Lanham Act trademark infringement case.
12  Domain name registration and use is always addressed
13  under the Cybersquatting Act, which is 1125(d), which was not
14  an issue in the underlying case.
15  THE COURT:  Yes, I know it wasn't, and that's why I
16  looked at the provision that was previously in the injunction
17  about transferring that domain name.
18  MS. HAMILTON:  And that was for the trademark
19  registration.
20  Many of these domain names have only been registered,
21  but the 1125(d) one also addresses use and trafficking and
22  using domain names because domain name use by itself is not
23  trademark infringement, so it does not fall under the Lanham
24  Act 1125(a), which is the only claims that were at issue in the
25  underlying case.

```
 1            I think that Paragraph 1(a), (b) and (c) would
 2   adequately protect any future use of a domain name as a
 3   trademark with adult-themed goods and services that is
 4   potentially likely to cause confusion, but the way it's written
 5   now -- for example, if you --
 6            THE COURT:  You know, it seems to me that a sensible
 7   way to address your concern -- and it's available even though
 8   no cause of action was pled under 1125(d) -- is to modify
 9   Paragraph 3 of this draft modification to say something along
10   the lines of, "The defendants are prohibited from using in bad
11   faith and with an intent to profit any internet domain name,"
12   and then, "that contains the term Flynt without also
13   containing."  That's a perfectly consistent remedy to the
14   proven infringement, even though there's no longer -- and there
15   never was -- a precise cause of action brought under 1125(d).
16            Why can't I impose that as a condition here?
17            MS. HAMILTON:  Because then you're actually imposing
18   what the elements of a 1125(d) claim is into this injunction
19   which requires bad faith intent and intent to profit.
20            THE COURT:  That's why I said that.  The injunction
21   would be limited to the use that would be accompanied by that,
22   and then we'll see what happens.
23            MS. HAMILTON:  But the underlying case was never
24   about bad faith registration and use of a domain name, so it's
25   not tied to the underlying case or trial.
```

| | |
|---|---|
| 1 | THE COURT: That's where we differ, Ms. Hamilton. |
| 2 | That's totally where we differ. |
| 3 | There wasn't a cause of action pled, but the whole |
| 4 | point about the case that was pled and about the case that was |
| 5 | tried and about the verdict that was returned was that your |
| 6 | clients were proceeding in a purposeful way to exploit the name |
| 7 | "Flynt" that they happened to have and to confuse it with |
| 8 | "Larry Flynt." So that's what I'm going to do here. |
| 9 | MS. HAMILTON: Your Honor, can I ask for one more |
| 10 | maybe modification? |
| 11 | THE COURT: Yes. You're here to make your point. |
| 12 | MS. HAMILTON: The adult-themed goods to us in that |
| 13 | provision is somewhat vague. We'd rather say pornographic |
| 14 | goods or services. |
| 15 | There's potential, for example, for a Flynt lingerie |
| 16 | line of clothing that might be viewed as adult but not |
| 17 | necessarily pornographic and not necessarily within the purview |
| 18 | of the items that Larry Flynt is involved with. |
| 19 | THE COURT: The problem is that "adult-themed" is a |
| 20 | term that's elsewhere present in this injunction, for example, |
| 21 | on Line 23 at Page 2 -- Line 22 in Paragraph 2. And I don't |
| 22 | want to have a wiggle-room invitation by substituting |
| 23 | pornographic because then you're talking about something that |
| 24 | has to be established as having a legal status or |
| 25 | classification, and a lot of what Larry Flynt does is not |

```
 1  necessarily pornographic but definitely adult-themed, so I'm
 2  not going to change that.  Anything else?
 3           MS. HAMILTON:  That's all, Your Honor.
 4           MR. DECARLO:  May I make a point to what Ms.
 5  Hamilton -- or may I just address the Court directly?
 6           THE COURT:  All right.  Go ahead.  Let's make this --
 7           MR. DECARLO:  I will.
 8           On Paragraph 3, Your Honor, in interposing the bad
 9  faith element, my issue with that would be the 1125(d) has a
10  series of factors that the Court considers to determine whether
11  something is bad faith, and under the principles of an
12  injunction that we want certainty and guidance so that our
13  clients know what they can and cannot do.  To interpose this
14  element of bad faith, which is necessarily a highly
15  fact-specific analysis, how does one know, you know, if Flynt
16  Brothers for Lingerie, for example, is bad faith?  That's like
17  a whole new trial to determine whether or not that's bad faith.
18           THE COURT:  Well, a way to avoid that risk is to use
19  the first names, okay?
20           It's not a requirement, but if you think that you're
21  constantly on the edge of disaster and out there on the
22  precipice, there are ways that you can deal with that supposed
23  uncertainty.
24           I'm not going to change my conclusion.  I will modify
25  Paragraph 3 in that respect.
```

```
 1              Anything further?
 2          MS. HAMILTON:  No, Your Honor.
 3          THE COURT:  Mr. Hoffman?
 4          MR. HOFFMAN:  No, Your Honor.  Thank you.
 5          THE COURT:  All right.  Thank you.  And the final
 6  modification and the order containing the change I just
 7  mentioned will go out today.
 8         (Proceedings concluded.)
 9                          --oOo--
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```